UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

KATE H.,[1]

        Plaintiff,

  v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 3:20-cv-00306-YY

OPINION AND ORDER

YOU, Magistrate Judge:

    Plaintiff Kate H. seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433. This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g).[2] For the reasons set forth below, that decision is AFFIRMED.

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of her last name.

[2] The parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).

1 – OPINION AND ORDER

## PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on June 21, 2016, alleging disability beginning on March 4, 2016. Tr. 99. Her application was initially denied on December 15, 2016, and upon reconsideration on March 2, 2017. Tr. 98, 112. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on November 8, 2018. Tr. 56-85. After receiving testimony from plaintiff and a vocational expert, the ALJ issued a decision on January 30, 2019, finding plaintiff not disabled within the meaning of the Act. Tr. 36-49. The Appeals Council denied plaintiff's request for review on January 24, 2020. Tr. 1-3. Therefore, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

**SEQUENTIAL ANALYSIS AND ALJ FINDINGS**

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found that while plaintiff engaged in substantial gainful activity from July 1, 2016, through September 30, 2016, Tr. 41, there was also a continuous twelve-month period during which plaintiff did not engage in substantial gainful activity since the onset date of March 4, 2016. Tr. 42.

At step two, the ALJ determined plaintiff suffered from the following severe impairments: obesity and degenerative disc disease. *Id.* The ALJ recognized other impairments in the record, *i.e.*, hepatitis C, cirrhosis, migraines, anxiety, posttraumatic stress disorder ("PTSD"), and major depressive disorder, but concluded these conditions to be non-severe. *Id.*

The ALJ found plaintiff's mental impairments, considered singly or in combination, did not meet or medically equal the criteria of listings in 12.00. Tr. 44. In making that finding, the ALJ considered the four broad areas of mental functioning, known as the "paragraph B" criteria, used to evaluate mental disorders. *Id.*; 20 C.F.R. Part 404, Subpt. P, App. 1, 12.00.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 44. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she could perform light work as

defined in 20 C.F.R. § 404.1567(b) with these exceptions: she can occasionally lift/carry and push/pull 20 pounds, and frequently lift/carry and push/pull 10 pounds; she can sit for six hours in an eight-hour workday; she can stand/walk for six hours total in an eight-hour workday; she can occasionally climb ladders, ropes and scaffolds, and crawl; and she can frequently stoop, kneel, and crouch. Tr. 45.

At step four, the ALJ found plaintiff capable of performing past relevant work as a library aid. Tr. 49. Thus, the ALJ concluded plaintiff was not disabled. *Id.*

## DISCUSSION

Plaintiff argues the ALJ erred by (1) rejecting her subjective symptom testimony; (2) failing to find her mental health impairments severe at step two; (3) failing to develop the record by disregarding post-hearing interrogatories; (4) weighing medical opinions based on incomplete evidence; and (5) failing to develop an accurate RFC.[3]

### I. Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the

---

[3] In her reply, plaintiff identifies for the first time the issue of fingering and handling. Pl. Reply. 1-2. The court does not address this issue because plaintiff has waived any argument not raised in her opening brief.

reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Here, the ALJ found plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" and did not identify evidence of malingering. Tr. 46. However, the ALJ concluded plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* In particular, the ALJ cited to plaintiff's activities of daily living and objective medical evidence in the record.

A.   **Activities of Daily Living**

An ALJ may discount a claimant's symptom testimony if it is inconsistent with the claimant's activities of daily living or if the claimant's participation in everyday activities

5 – OPINION AND ORDER

indicates capacities that are transferrable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012). A claimant need not, however, be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Here, the ALJ found plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent with her daily activities. Tr. 46. Specifically, the ALJ found plaintiff

> reports that she is able to perform a wide variety of activities with her impairments. For example, she does water aerobics for two hours, three nights a week. The claimant also reports that she goes grocery shopping every 7-10 days, and can carry a bag of groceries. She noted that she swims for 90-minutes, washes dishes, washes laundry, cleans the home, sweeps/mops, feeds and waters the cat, prepares meals, reads the newspaper, and uses a computer to access the internet and check her email[]. The record also shows the claimant reported doing yoga in November 2016[]. Lastly, she stated that her job involves editing other[']s writings during the day[].

Tr. 46 (internal citations omitted).

Plaintiff alleges her symptoms are so severe that her pain makes it hard to concentrate, comprehend information, and remember. Tr. 45-46, 208, 213. Plaintiff claims her physical limitations do not allow her to stand or sit more than fifteen minutes and she cannot walk more than five minutes without pain. Tr. 45-46, 208. Plaintiff also testified she can stand stationary for no more than ten minutes and can walk for no more than twenty minutes. Tr. 65. These alleged limitations, however, conflict with plaintiff's activities.

Plaintiff testified she works on the computer eight to nine hours a day. Tr. 83. She can only sit for twenty to thirty minutes, so to relieve the tension she will "stand and sometimes [] walk around a little bit [or] do lunges or lift [her] leg to [her] chest[.]" Tr. 64. Furthermore,

6 – OPINION AND ORDER

plaintiff testified "whenever anything starts to hurt, instead of continuing to sit through the pain, [she will] get up and go do dishes or load of laundry or something to relieve the pain and then [] go back to [the] computer." Tr. 84. When asked about her pain on a scale of one to ten, "with one being just a mild achy sensation and/or stiff sensation, and ten being emergency," plaintiff testified that average pain on "the sciatica [is] like a two and on the liver I would say like a three and occasional flares," resulting in a "five or six." Tr. 64-65.

Plaintiff also testified she attends water aerobics at an aquatic center three nights a week and does a "work out" for about two hours each of those nights. Tr. 64. The record reflects plaintiff used to swim once a week and now swims three times a week to "try to keep some range of motion." Tr. 212. Plaintiff clarifies that she does not "swim" but performs "water exercises." *Id.* The record reflects that plaintiff goes to church, grocery stores, and farmers' markets once weekly, and will attend classes, lectures, and poetry readings monthly depending on availability. *Id.*

The ALJ reasonably used plaintiff's activities of daily living to illustrate contradictions in her testimony and thus reasonably rejected plaintiff's symptom testimony on this basis. *See Orn*, 495 F.3d at 639. Contradictory statements are a clear and convincing reason to reject symptom testimony. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). The ALJ's interpretation was reasonable and the ALJ made the requisite specific findings to reject plaintiff's subjective symptom testimony. Because the ALJ's findings are supported, they must be upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (holding if evidence exists to support more than one rational interpretation, the court is bound to uphold the ALJ's findings).

### B. Objective Medical Evidence

The ALJ also discounted plaintiff's statements based on the objective medical evidence. Tr. 46. "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F. 3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (holding the reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony").

In this case, the ALJ first summarized plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms:

> The claimant alleges she has been disabled since March 4, 2016. On the claimant completed disability report, she alleges she has the following: compressed nerve in back with sciatic pain in both legs, hepatitis, diabetes mellitus, arthritis, varicose veins, migraine headaches, kidney stones, peripheral neuropathy, posttraumatic stress syndrome, and anxiety[]. On the claimant completed function report, she also alleges she cannot stand or sit for more than 15 minutes without pain; she cannot walk quickly; she needs a cane for balance to keep from falling; she cannot walk for five minutes without pain; pain makes concentrating and comprehension harder; she has to ask people to repeat themselves, and has to write down what they say so she can remember; and, she cannot tolerate heat even in air conditioned rooms[].
>
> During the hearing, the claimant stated that she cannot work because of her conditions. The claimant and her attorney alleged that the claimant is limited to less than sedentary exertional work; she cannot perform her past work; she has problems working with other people; she has shooting pain down her legs; she has gastrointestinal challenges; her conditions caused her to miss several days of work; she has hepatitis C with symptoms; she has psoriasis; she has sciatica with back pain; she can only stand for about 10 minutes, walk about 20 minutes, and sit about 20 minutes at a time; she needs to move and/or do lunges after staying in place for too long; she cannot kneel or squat; she needs to lay down throughout the day; and, she cannot do household chores.

Tr. 45-46 (internal citation omitted). The ALJ then detailed the specific medical evidence in the record that did not support plaintiff's testimony.

In particular, the ALJ cited Dr. Raymond Nolan's physical consultive examination. Dr. Nolan found plaintiff "was able to go from sitting to standing without difficulty; her gait and tandem walk were normal; she was able to walk on her toes and heels; her squat rise maneuver was adequate; and, she did not need an ambulatory aid during the examination (7F, 1)." Tr. 47. Dr. Nolan also found plaintiff has "no joint deformities" and her "grip strength was normal and symmetric; and, she has normal strength in her interossei, extensor policis brevis, biceps, triceps, pronators and suppinators, shoulder internal and external rotators, deltoid, and shoulder shrug (7F, 2)." Tr. 47. With respect to plaintiff's lower extremities, Dr. Nolan found plaintiff to possess "normal strength in her iliopsoas, thigh abductors and adductors, quadriceps, hamstrings, anterior tibialis, posterior tibialis, and peroneus" and "no signs of muscle atrophy (7F, 2)." Tr. 47

The ALJ summarized the vocational limitations that Dr. Nolan found based on his examination:

> [T]he claimant can occasionally bend, twist, and turn of the trunk; she can lift/carry 10 pounds frequently, and lift/carry 20 pounds occasionally; she can sit for six hours in an eight-hour workday, with opportunity for position changes if needed for comfort; she can occasionally perform repetitive hand wrist activity; and, she can stand/walk for four hours in an eight-hour workday (7F).

Tr. 47.

The ALJ adopted the portion of Dr. Nolan's opinion concerning plaintiff's physical condition but rejected Dr. Nolan's assessment of vocational limitations because the limitations were inconsistent with the findings of her physical condition. The ALJ supported this by stating:

> First, these opinions are inconsistent with the doctor's findings that the claimant had normal muscle strength in just about every area of her body. Second, the severity of these opinions are inconsistent with the claimant's reports about swimming and performing water aerobics several days a week. Third, these opinions are inconsistent with the claimant's statements that she washes dishes, washes laundry, cleans the home, sweeps/mops, and prepares meals (3E). Fourth, the severity of these opinions is inconsistent with the claimant's statements about her work activity, which involves writing and editing. Lastly, the medical record as a whole does not support the severity of these opinions.

Tr. 47-48.

In further discussing the medical record, the ALJ gave weight to state agency medical consultants Peter Bernardo, M.D., William Nisbet, M.D., and Tom Dees, M.D. Tr. 48. The ALJ noted these doctors are medical experts with experience in the vocational issues involved in the disability program under the Social Security Act. *Id.* The ALJ summarized the vocational limitations provided by these doctors:

> [C]laimant can occasionally lift/carry 20 pounds, and frequently lift/carry 10 pounds; she can stand/walk six hours in an eight-hour workday; and, she can sit for six hours in an eight-hour workday (1A; 3A). The doctors also stated the claimant can occasionally climb ladders/ropes/scaffolds and crawl; and, she can frequently stoop, kneel, and crouch (1A; 3A).

Tr. 48. The ALJ found the vocational limitations summarized above are supported by plaintiff's "reports of exercising daily, working as an editor, and performing household chores." *Id*.

The medical records cited by the ALJ support the ALJ's conclusions. Even if plaintiff has an alternative interpretation of the medical evidence, the ALJ's interpretation was rational and supported by substantial evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (holding that where an ALJ's interpretation of the evidence is reasonable and supported by substantial evidence the court must uphold the ALJ's determination even if there are reasonable alternative interpretations). An ALJ may not reject a claimant's subjective symptom testimony "solely because the available objective medical evidence does not substantiate [her] statements."

C.F.R. § 404.1529(c)(2). But here, the ALJ also discredited plaintiff's testimony on grounds it was inconsistent with her daily activities. Thus, the ALJ provided specific, clear and convincing reasons for rejecting plaintiff's subjective symptom testimony.

## II. Step Two

Plaintiff contends the ALJ erred at step two by failing to conclude that her mental impairments were "severe." Pl. Br. 16.

At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(c); *see also Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (citations omitted). The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b).

The ALJ found plaintiff's medically determinable mental impairments are "anxiety/posttraumatic stress disorder and major depressive disorder." Tr. 42. With respect to mental disorders of this type, the ALJ must assess the severity of the mental disorder by considering four areas of mental functioning provided in the disability regulations for evaluating mental disorders. 20 C.F.R. Part 404, Subpt. P, App. 1. These four areas of mental functioning are referred to as "paragraph B" criteria and include: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.

In assessing the medical evidence of record and the paragraph B criteria, the ALJ determined the "medically determinable mental impairments of anxiety/posttraumatic stress

disorder and major depressive disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." Tr. 42. The ALJ found these impairments to be non-severe based on the medical evidence of record:

> The examiner, Barbara M. Gibby-Smith, Psy.D., stated that the claimant was able to complete both serial T's and 3's accurately; she was able to recall six digits forward, and five digits backward; and, she completed most arithmetic problems correctly (8F, 7-8). The doctor also found that the claimant has a vocabulary IQ of 129, and an overall IQ of 122 (8F, 8). Dr. Gibby-Smith diagnostic impression of the claimant is she has generalized anxiety disorder; and, major depression (8F, 8). The doctor also assessed her with a global assessment of functioning (GAF) score of 60[] (8F, 8). Lastly, Dr. Gibby-Smith opined the claimant is capable of managing funds (8F, 8).

Tr. 43 (foot note omitted). The ALJ adopted Dr. Gibby-Smith's opinion in part. The ALJ found that Dr. Gibby-Smith's opinion that the claimant is capable of managing funds is "consistent with objective psychological testing and the record as a whole." *Id.* However, the ALJ gave little weight to the GAF score provided by Dr. Gibby-Smith for several reasons:

> First, it is only a snapshot of the claimant, and provides only vague and non-specific opinions regarding the claimant's vocational abilities. Second, this opinion is inconsistent with the claimant's reports of reading, editing, and writing for 8-9 hours a day. Finally, the claimant's reports about exercising daily and performing household chores do not support the severity of this opinion.

Tr. 43.

With respect to the paragraph B criteria, the ALJ addressed each functional area. Concerning the first area, understanding, remembering, or applying information, the ALJ determined plaintiff has a mild limitation. Namely, the ALJ noted plaintiff is:

> able to pay bills, count change, handle a savings account, and use a checkbook or money order (3E). The claimant has a Bachelor's degree in Creative Writing and English Literature (8F, 8). She was able to complete both serial T's and 3's accurately; she was able to recall six digits forward, and five digits backward; and, she completed most arithmetic problems correctly (8F, 7-8). The claimant spends

>     8-9 hours on the computer reading fiction or non-fiction, researching, emailing, and
>     writing and editing work (8F,7).

Tr. 43.

With respect to the second functional area, interacting with others, the ALJ recognized that Dr. Gibby-Smith's "diagnostic impression of the claimant is she has generalized anxiety disorder and major depression." Tr 43. However, the ALJ concluded that these posed only a "mild limitation." Tr. 43; *see also* Tr. 42 (finding plaintiff's medically determinable mental impairments of anxiety/posttraumatic stress disorder and major depressive disorder, considered singly or in combination, do not cause more than minimal limitation[.]"). The ALJ supported this determination by citing to plaintiff's statements that she "lives with her husband (8F, 7)," i.e., maintains a marriage, and that "she has three good friends that she socializes with (8F, 7)." Tr. 43-44. The ALJ also cited to plaintiff's report that she "shops in stores for groceries (3E)."[4] Tr. 44.

Plaintiff claims she was fired from her job for being mentally unstable. Plaintiff slammed a microwave door with her cane and used the word "bitch slap" to another coworker, resulting in an accusation of workplace violence. Tr. 59. Plaintiff contends "[t]here is no question her mental state interfered significantly with her ability to keep her job." Pl. Br. 16. But the records cited by the ALJ support a finding of mild limitation in plaintiff's ability to interact with others, and this court is required to uphold the ALJ's determination even if there are reasonable alternative interpretations of the record. *Rollins*, 261 F.3d at 857.

With respect to the third functional area, concentrating, persisting, or maintaining pace, the ALJ found plaintiff has a mild limitation. The ALJ supported this claim as follows::

---

[4] The ALJ cited to plaintiff's Function Report in which she stated she went outside every day and shopped for groceries in stores weekly for four hours. Tr. 211.

> [Claimant] was able to complete both serial T's and 3's accurately; she was able to recall six digits forward, and five digits backward; and, she completed most arithmetic problems correctly (8F, 7-8). The claimant spends 8-9 hours on the computer reading fiction or non-fiction, researching, emailing, and writing and editing work (8F, 7). She is able to pay bills, count change, handle a savings account, and use a checkbook or money order (3E). The claimant has a Bachelor's degree in Creative Writing and English Literature (8F, 8).

Tr. 44.

With respect to the fourth functional area, adapting or managing oneself, the ALJ determined plaintiff has a mild limitation. The ALJ supported this assertion by citing to plaintiff's reports that she "is able to perform household chores, wash dishes, wash laundry, clean the home, and sweeps/mops." Tr. 44. The ALJ also noted that plaintiff can shop in stores for groceries and can prepare meals. Tr. 43-44 (citing 208-15, 434-35).

On this record, it was reasonable for the ALJ to conclude that plaintiff's mental impairments were not severe. The medical records cited by the ALJ support this conclusion, and this court is required to uphold the ALJ's determination even if there are reasonable alternative interpretations of the record. *Rollins*, 261 F.3d at 857.

An ALJ is required to consider all limitations, whether severe or non-severe, when assessing a claimant's RFC. *See* 20 C.F.R. § 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity."). However, an ALJ need not include such non-severe limitations in the RFC if they do not cause more than a minimal limitation on a claimant's ability to work. *See Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005) (finding an ALJ's decision not to include the plaintiff's impairment in VE hypothetical or RFC determination was proper because there was no evidence the plaintiff's impairment caused any functional limitations); *Ball v. Colvin*, No. CV

14–2110–DFM, 2015 WL 2345652, at *3 (C.D. Cal. May 15, 2015) (recognizing mild mental impairments "by definition do not have more than a minimal limitation on Plaintiff's ability to do basic work activities . . . which translates in most cases into no functional limitations," and thus the ALJ was not required to include them in the RFC). Here, the ALJ found that "the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas." Tr. 44. As such, the ALJ was not required to include them in plaintiff's RFC.

Thus, the ALJ did not err at Step Two.

### III. Development of the Record and Post-Hearing Issues

The ALJ included in the RFC that plaintiff can frequently crouch. Plaintiff contends this was error because at the time of the hearing, the evidence was ambiguous concerning her ability to crouch. Pl. Br. 11. Plaintiff also argues the ALJ erred by allowing interrogatories on this issue to be submitted to Dr. Nolan but then failed to act on them. *Id.* at 12.

#### A. Evidence Concerning Plaintiff's Ability to Crouch

Regarding plaintiff's ability to crouch, the ALJ observed that the state agency medical consultants "stated the claimant . . . can frequently . . . crouch." Tr. 48; *see* Tr. 96 (Dr. Bernardo found plaintiff was capable of "unlimited" crouching); Tr. 111 (Dr. Nisbet found plaintiff was capable of frequent crouching). The ALJ gave "great weight" to their opinions because they are medical doctors who reviewed the record and have experience in vocational issues related to social security cases, and plaintiff's reports of daily exercise, work as an editor, and performance of household chores support their opinions. Tr. 48.

Additionally, while Dr. Nolan did not expressly use the term "crouching," he opined that plaintiff's "squat rise maneuver was adequate," and the ALJ cited to that opinion in his decision.

Tr. 47. The ALJ also recognized that, regarding plaintiff's lower extremities, Dr. Nolan found plaintiff had "normal strength in her iliopsoas, thigh abductors and adductors, quadriceps, hamstrings, anterior tibialis, posterior tibialis, and peroneus." Tr. 47.

Thus, the record at the time of the hearing was not ambiguous as to whether plaintiff could frequently crouch. It contains substantial evidence to support the ALJ's determination.

### B. Duty to Develop

"An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Here, as discussed above, the record was not ambiguous as to plaintiff's ability to crouch. Moreover, the ALJ had years of plaintiff's medical records and multiple opinions from non-examining sources to inform his decision. Accordingly, the duty to conduct further investigation was not triggered. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (explaining that the ALJ was not required to develop the record where the ALJ had underlying medical records and multiple opinions from nonexamining sources to inform the decision). Substantial evidence supports the ALJ's decision concerning plaintiff's ability to crouch and the ALJ was not required to develop the record further.

### C. Post-Hearing Interrogatories

During the hearing on November 8, 2018, plaintiff's counsel said she wanted to "send an interrogatory to Dr. Nolan to find out what he thinks of [plaintiff's] ability to crouch, even as an aggressive." Tr. 77. In response to the ALJ's question regarding how long she needed, plaintiff's counsel replied two weeks. *Id.* The ALJ responded, "That's fine, and it doesn't have to be an interrogatory, just a statement from the doctor." *Id.* At the end of the hearing, the ALJ said:

> I'm going to leave the record open for a couple of weeks for your Counsel to try to get a statement from Dr. Nolan and once I get the statement in, I'll review the statement, as well as the other medical records in the file, in light of both your testimonies and Mr. Hincks' testimony today and we'll do -- I'll make a decision at that point in time.

Tr. 84.

Plaintiff's attorney failed to supply any statement from Dr. Nolan post hearing. Instead, on November 13, 2018, plaintiff's attorney sent a letter to the ALJ that stated:

> This follows [plaintiff's] hearing. You gave permission to draft some interrogatories for Dr. Nolan, MD. Accordingly, I would pose these interrogatories:
>
> 1. Assume that "occasional" means from very little up to one-third of a workday.
> 2. Assume that "frequent" means from one-third up to two-thirds of a workday.
> 3. What is [plaintiff's] functional capacity to crouch or squat?

Tr. 260. Plaintiff contends the ALJ failed to act on the interrogatories and thereby failed to discharge his responsibility to develop arguments for and against disability. Pl. Br. 12.

But the ALJ said he would leave the record open for plaintiff's "[c]ounsel to try to get a statement from Dr. Nolan." Tr 84. An ALJ may discharge the duty to develop the record further by keeping the record open after the hearing to allow supplementation of the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir.1998)). That is what the ALJ did here, thereby satisfying the duty to develop the record further.

### D. Post-Hearing Evidence

Plaintiff contends that because the ALJ failed to discharge his responsibility, she obtained her own functional capacities examination from Alison Modaferri, PT, DPT. Tr. 12; *see* Tr. 34. Plaintiff argues that "[n]one of the doctors hired by the Commissioner have seen the [functional

capacities examination] report of Ms. Modafferi" and, therefore, "the opinions of all are incompletely informed." Tr. 13. Plaintiff further contends that, "[a]t the very least this case should be remanded to address the report of Ms. Modafferi." Tr. 13.

But plaintiff's hearing before the ALJ was held on November 8, 2018, Tr. 85, and plaintiff was not assessed by Modafferi until April 16, 2019. Tr. 34. In *Macri v. Chater*, the Ninth Circuit held that medical opinions created after the ALJ renders a decision are "less persuasive." 93 F. 3d 540, 544 (9th Cir. 1996) (citing *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989)). Thus, in that case, the Ninth Circuit held that the Appeals Council "did not err when it concluded the ALJ's decision was not contradicted by the weight of the evidence." *Id.*; *see also Yolanda P. v. Comm'r of Soc. Sec. Admin.*, No. 6:19-CV-00721-YY, 2020 WL 4504699, at *7 (D. Or. Aug. 5, 2020) (quoting *Barker v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08136-PCT-DWL, 2019 WL 3718975, at *5 (D. Ariz. Aug. 7, 2019)) ("*Macri* holds that a retrospective opinion is entitled to less weight than a contemporaneous one.").

Here, plaintiff did not submit a functional capacities examination within the timeframe the ALJ left the record open. Instead, five months after her hearing, plaintiff obtained a new functional capacities report and submitted that evidence to the Appeals Council. Tr. 34. The Appeals Council rejected this evidence, stating:

> You submitted medical evidence from Therapeutic Associates dated April 5, 2019 - May 10, 2019 (11 pages) and Forest Grove dated March 26, 2019 - April 16, 2019 (12 pages). The Administrative Law Judge decided your case through January 30, 2019. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before January 30, 2019.

Tr. 2.

For these reasons, the ALJ did not err and his decision is supported by substantial evidence.

**ORDER**

The Commissioner's decision is AFFIRMED.

DATED June 4, 2021.

                                              /s/ Youlee Yim You
                                      Youlee Yim You
                                      United States Magistrate Judge